The next case for argument is Tompkins v. DOVA, docket 20-6060. Mr. Shadid, we're ready to hear your argument when you're ready to proceed. May it please the court. I have actually with me here today Dr. Tompkins, who is seated in this room to hear this argument with us. One thing I'd like to go into to begin with, unless we need to go through all of the facts, which I'm sure we'll be talking about. There is, in my opinion, confusion here regarding accepted service versus non-accepted service. This is not a situation where we're talking about a differentiation between an employee of the Veterans Administration who is within the accepted service or non-accepted service or non-preferenced. That is not what we're talking about here. We are talking about a new set of statutes, which has never squarely been addressed, certainly by this court. And that would be statutes that were enacted in 1991 under Public Law 102-40, which was called the Department of Veterans Affairs Health Care Personnel Act of 1991. We cited that in our briefs. The cases that the district court in our case went off on, in which the counsel for the Veterans Affairs went toward, started with Fausto. And they say Fausto has never been overruled. Yet the district court in our case, and in other cases, starting with Bosco back in 1991, recognized that Fausto had been superseded. And you don't usually overrule a case that's been superseded. It was superseded by statutes in 1990 under Public Law 101-376, which was enacted August 17 of 1990. And that's cited in our briefs. And that is what the district court somewhat referred to in the order in this case. It is also what was referred to in Bosco, which came out in approximately May 1st, I believe it was, 1991. Well, nothing in those amendments undermined the reasoning of Fausto, did they? It changed the dynamic, Your Honor. You have a statute that provides judicial review for certain claims but doesn't for other claims, right? What we have is silence in one statute, Your Honor. Okay. So you have one that says it and one that's silent. We have one that's silent. And this court has stated, as recently as 2017, in Kansas, X. Rel. Schmidt versus, I believe it's pronounced Z. I. N. K. E. cited in both of our briefs. That language of inclusion in one statute should not be used as an exclusion if it's not actually included or if it's silent in another statute. And the district court in this case cited... What about in the statute where it's silent? You have the circumstance where Congress demonstrates they know how to include things. And so if in 7462 they don't include it, doesn't that indicate that they meant to exclude it? Well, Congress also knows, Your Honor, of the long-lasting and long-standing presumption that judicial review is required or is intended. And that's been held up case after case. And we've cited it in our briefs. That's not responsive to my question. I'm sorry, Your Honor. That's not responsive to my question. Well, Your Honor, I believe you asked me if it's not included, if that's supposed to be a clear indication. I don't think so, we take it in the context of our case law. And Congress knows what our case law is. And our case law says that there is a clear presumption of judicial review and that the agency bears the heavy burden of showing that that presumption should not exist in this case. Plus, in the new statute, Your Honor, in 1991, in section... Well, let me... Congress also knew about the Supreme Court's reasoning in Fausta when they made those amendments, didn't they? They certainly did, Your Honor. They wanted to give judicial review, they maybe would have said, oh, I guess we need to say it. But they did enact, as part of these new statutes, Your Honor, a directive to the Secretary of the Veterans Administration to enact specific procedures for, in this case, doctors who are not going to the Disciplinary Appeals Board. And that's what I'm trying to point out, Your Honor, is now we have a differentiation between not accepted service or non-accepted service. We have a differentiation between some doctors who are... All of the doctors are of the same category, except one set of doctors who have been terminated or had an adverse action based upon their professional conduct, that is clinical conduct, they get to go to the Disciplinary Appeals Board and then have judicial review, according to section 7462. 7463 says that the Secretary shall provide specific rules. And what we get to here is, is it logical that Congress would intend to allow this type of what's happened here when the rules are not followed without having judicial review? And that's what we have here, is a situation where the rules were not followed. Well, you're assuming the rules include judicial review for a disciplinary action that doesn't involve patient care. I'm not assuming it like that, Your Honor. I am arguing congressional intent on whether or not Congress would have intended to allow the Secretary to create rules that are not necessarily enforced, as in this case, and then not have judicial review to rectify the situation. If the rules were followed, we wouldn't be talking about anything here today. But in this case, the rules were not followed. They were grossly not followed. They were not followed because the hearing examiner found in favor of Dr. Tompkins, recommended reinstatement, and pointed out that the deficiencies might have been permissible for removal from his position as chief of surgery, but not a year and a half later, when he is a practicing orthopedic surgeon who's been there over 30 years, and then remove him on the basis of potential violations or administrative deficiencies from a year and a half earlier, when now he's an orthopedic surgeon. Dr. Tompkins was entitled to the benefit of the grievance examiner's findings and recommendations, unless the network... Is this your due process and equal protection argument? It does go there, Your Honor. Your issues five through eight? It does go there, Your Honor. Why are those not forfeited? You didn't raise any of these before the district court. I mean, you can't raise these for the first time on appeal. I believe we did raise them in the district court, Your Honor. We argued Fifth Amendment in our amended complaint, and the Fifth Amendment both includes elements of equal protection as well. You didn't make any arguments like you're making now about that the specific procedures violated equal protection in the Fifth Amendment, and I really don't think just throwing out the phrase Fifth Amendment is enough to put the district court on notice that that's what you're arguing, and the district court didn't rule on that because the district court didn't have any reason to believe you were arguing this. Well, the district court certainly had reason to believe we were talking about due process under Fifth Amendment, and the district court didn't even address that. The district court simply said, well, it's not in the statute, and if you follow the then it's simply not being provided for by Congress, and what I'm trying to argue to this court is the court can take this on a congressional intent basis just looking at statutes before we get to the constitutional level, but if Congress really intended to create a situation, and I don't think that it would be logical for Congress to have created a situation where the rules that are written by the secretary are not followed by the supervisors, and then you have the case of what we have here is arbitrariness, capriciousness, unfettered discretion. All right. Well, you may have a preservation problem on the constitutional argument, but let's assume for right now that you don't. Do you still have to have a waiver of sovereign immunity to make a constitutional argument in this case? And that's one of the other items I wanted to address the court about. For example, I believe it was the First Circuit in Pathak that we cited that pointed out that there could still be subject matter jurisdiction over the constitutional claims regardless of any statutory bar. Is that the best case that you have? Is that it? On the subject matter of whether or not there could still be. The First Circuit recognized in 2001 that there still could be authority or subject where there was a colorable constitutional claim. And I submit that there is certainly a colorable constitutional claim in this case. What is somebody like Dr. Tompkins, I would be asking the court or asking. Yes, I'd be submitting to the court. If the situation is there, and this would go to congressional intent or certainly the court could look at it from a congressional intent standpoint. What happens when the rules are simply ignored? When Mr. Gigliotti rejects the grievance examiner's recommendations after 12 hours of evidentiary hearing covering three days and does not make specific statements as required under the VA handbook, does not make specific statements of how the recommendations were contrary to regulations, contrary to departmental public or published departmental policy, or were not in accordance with the preponderance of the evidence. That didn't happen in this case. I understand that argument. And that's the dilemma is, do you contend that Dr. Tompkins has a property interest in his employment? And if so, based on what? Based upon the fact that it's a permanent employment. Your honor is set forth in, uh, let's see if I can find the statute very quickly. I believe it's in title 38. It's in title 38, section 7461, your honor, subpart C1. Uh, where it is written there that, uh, section 7401 sub one employees of which Dr. Tompkins is our employees for the department on a full time basis under a permanent appointment. And therefore, and certainly being there for over 30 years, had the reasonable expectation of that continued employment. And it's extreme. I would submit it's a very colorable claim. Constitutional claim. When the person that heard the evidence found in favor of Dr. Tompkins and the person who did not hear the evidence simply rejects it out of hand. That certainly makes his position as a permanent and a recommended reinstated person or physician as being a colorable claim. You're familiar, you're familiar with our case of Lombardi versus small business administration. Yes, I am your honor. Why is that case not just, uh, resolve your, uh, second claim, the, uh, constitutional claim against you Lombardi or injunctive relief. In Lombardi, there was no expectation of a reasonable expectation of continued employment. This was an intern, your honor. It wasn't, didn't rise to the level of a colorable constitutional claim. And, um, that person was even part of the accepted service. And it dealt with, um, basically, uh, an intern and it simply didn't rise to the level of a person in Dr. Tompkins position, your honors. I'm sorry. The case indicates that certain personnel, uh, agency personnel decisions are not subject to judicial review, doesn't it? It does say that your honor, and it's before the new statutes that came into effect. And in my last 30 seconds, what I'd like to at least point out, I had hoped to reserve some, but I simply want to point out that we're not talking about categories of employees. We're talking about employees who are terminated for one reason versus terminated for another. And some get judicial review following a detailed hearing that goes all the way up the ladder to the secretary and employees that don't get judicial review in a situation left open to potential arbitrariness and capriciousness, which happened here. Thank you, your honors. Um, if, if you will indulge me, I have certainly, um, I'm actually judge Phillips. Is that all right? Oh, absolutely. Of course. Um, is there something in these amendments you keep relying on that you think changed the, uh, the statute with respect to having one section that says there's judicial review and then for the other, the other causes of action or reasons for discipline that there silent? Is there something in these amendments that you think changed that framework? I think at least the inclusion of specific directives to provide procedures under 7463 is important. And if it's not, if it's not followed, then I think that the presumptions that I've talked about should be applied. Okay. So that's all you're pointing to is the directive to come up with procedures. And that they'd be followed. Thank you, your honors. Frazier, please proceed when you're ready. Thank you, your honor. AUSA Rebecca Frazier on behalf of secretary McDonoghue. There is no judicial review of appellant's termination. Yet appellant asked this court to disregard the decisions of every other circuit that has addressed this issue. Additionally, appellant failed to plead a waiver of the United States sovereign immunity for his constitutional claims. It is clear that the district court lacked jurisdiction to consider all the claims at issue and its decision should be affirmed. Well, let me ask you there then, because that leaves us in an uncomfortable spot, which is what, and correct me where I'm wrong, which is whether it's a director Vlasic or director Gigliotti after the grievance examiner has ruled could simply say, I don't care about the handbook and I don't care about any of these rules. This guy has bothered me for a long time. He parks too close to my car and I can't get my door open or whatever. He's out of here. And there is no review whatsoever done? Well, in this instance under 7463, there is no judicial review. I understand for the court, the concern is protecting against unfettered agency discretion. That's why this is a multi-layered review process. There are several individuals involved in the process. As noted in the appellee's brief, the secretary's brief at pages 37 and 38, you have several individuals involved in the determination process. All the way here in Oklahoma City, individuals that work with appellant to the grievance examiner who came from a different vision. And then also the network director who does not work at the facility with the appellant. He works in Colorado. So it's a decentralized process. And that's part of the reason why it protects against unfettered agency discretion. You have multiple individuals involved. That only works if the last person in the chain is fair and applies the rules the way the rules are supposed to be and answers why there's not a preponderance of evidence or something else. And if that person's not, and there are indications here that there's at least a as far as the efforts to get this guy fired and the neutral people saying, no, he shouldn't be. In fact, he's a good surgeon and whatever else, but still the plug is pulled from the wall. I have concerns about whether or not this has been a fair process for the doctor. And what you're telling me is, don't worry about it because we've got this fair process in place where various people look at this. So what if the director is unfair about it? There's no relief. I would respectfully disagree with the court that the process was adhered to. And first off the allegations related to attempts to terminate the appellant. Those allegations have only been made against director of losses, who was the system director involved in the initial phases of the termination after the grievance examiners hearing. And after the final decision by the network director who was director Gigliotti, the only allegations of bias that are made against network director Gigliotti relate to him signing a memorandum in August of 2017, saying that he reviewed the OIG investigation. And so when you look at the allegations of bias against network director Gigliotti, especially in light of this court's case and in magnets, it's clear that these are not substantiated allegations of bias. They don't rise to the level of colorable constitutional claims. Ms. Fraser, the problem I'm having is that that's not the question about, the question is, does this statute allow unfair biased rulings in the agency that cannot be reviewed by the judiciary? That's the question. I appreciate that, your honor. That is not what the statute, that is not what the secretary is arguing in this case. The issue with the constitutional claims are appellant's failure to identify a waiver of sovereign immunity. So that Samant case is instructive here. The secretary is not asserting that there's no review for constitutional allegations here. The issue is that appellant must adequately identify a waiver of the United States sovereign immunity and must present colorable constitutional claims, which he has- If there's injunctive relief that's requested, sovereign immunity is not a problem, right? Well, in this instance, if the injunctive relief is pursuant to the APA, it's clear that there's no APA review here. But under Samant, appellant could proceed under a Bivens action or under Mandamus relief, which he chose to do in his subsequent- What if he just proceeds asking for the injunctive relief of back pay? Well, I would assert again that in light of FAUSTO and in light of clear discernible congressional intent, there's no judicial review in that instance. But judicial review- That is the question. So you're saying that where you have an unfair process, there can be no judicial review? If appellant fails to plead an adequate waiver of the United States sovereign immunity, yes, unfortunately, Your Honor. It's incumbent upon appellant to adequately plead a waiver of the United States sovereign immunity. And if he fails to do that, the waiver, there's no provision permitting the waiver simply because he failed to adequately plead the waiver of sovereign immunity. So yes, if appellant pleads an adequate waiver of sovereign immunity and if he states colorable constitutional claims, then those claims can be heard by the court. But those are the two prongs that must be met in addition to stating plausible constitutional claims. And I just want to circle back to the allegations of issue against the network director. The network director did follow the VA handbook. The VA handbook requires a specific statement if the network director decides to reject the grievance examiner's recommendation. And that specific statement is limited to certain grounds, right? If the grievance examiner's recommendation is unsupported by a preponderance of the evidence or if it's contrary to law, regulation, or policy, one only need to look to the network director's decision letter to see that it clearly complies with the handbook regulations as well as the statutory provisions. The decision letter goes through and identifies the issues. It identifies that at issue, there's a failure of Dr. Tompkins to provide adequate oversight. It talks about the employee's position, that Dr. Tompkins feels as though he took appropriate action and that the penalty of termination is excessive. And then the network director explains that he reviewed all of the evidence. He looked at the grievance examiner's recommendation. He reviewed the evidence file. He reviewed the OIG investigation and found, given all of the evidence, that the allegations were serious enough to rise to the level of discharge, particularly given appellant's position as chief of surgery and because of the severe impact to the surgery service and the facility as a whole. So it's- And according to your argument, none of that makes any difference. There's just no judicial review, correct? Well, Your Honor, again, I would respectfully disagree. It's incumbent upon appellant to identify a waiver of the United States sovereign immunity. And if that is done sufficiently- Review process have to do with that. There's nothing to do with that, correct? If there's- If appellant fails to adequately plead a waiver of sovereign immunity and state colorable constitutional claims, that is correct, Your Honor. Well, are you saying there was a waiver of sovereign immunity that they just didn't rely on? That's exactly correct. And what- I mean, it couldn't be a Bivens claim because here the claims are against the officials in their official capacity, right? So appellant actually filed a second lawsuit while this appeal was pending before this court. He filed a subsequent lawsuit alleging Bivens claims against both of the individuals, the officials in this case. He also sought mandamus relief. So it's clear that appellant subsequently realized that there were other alternatives for relief available to him that he simply failed to plead in the first case. And so in those instances, there are potential waivers of sovereign immunity, but he has to adequately plead that. He also has to state colorable constitutional claims. So again, I would impart to the court, I think part of the concern here is what does due process require? Due process requires adequate notice, the ability to have a hearing. Appellant never asserts that he didn't receive adequate notice of his termination. The parties agree that appellant received a three-day, 12-hour hearing, had the ability to call witnesses, cross-examine the government's witnesses, have the benefit of legal representation, all within the framework of an adversarial proceeding. Due process doesn't require perfect terminology in a decision letter. It doesn't require a result that the appellant agrees with. And when you look at 7463, the statute itself, it permits rejection of the grievance examiner's recommendation. That is a permissible action to take. The handbook permits rejection of the grievance examiner's recommendation. That in and of itself is not indicative of a due process violation. Also, I just want to touch briefly. Appellant talked about the distinctions in the two statutory provisions. 7462 relates to performance issues and physicians being disciplined related to their professional conduct and competency. And so I think the distinction in how these two disciplinary actions are treated is key. Because when you're talking about discipline related to a physician performance, that has an infinite number of implications. The physician's ability to have a license, their ability to be credentialed at other hospitals, their variability to practice as a physician is at issue. In stark contrast, under 7463, you're essentially treating these employees as at-will employees because they're being disciplined for managerial failures. Well, let me interrupt you there because opposing counsel indicates that these employees have permanent employment under this section. That they have a legitimate expectation of permanent employment. That doesn't sound like an employee at will. Some of them do. It depends on the actual statutory provision. In this case, under the provision that Dr. Tompkins was appointed pursuant to, yes, he technically was a permanent employee. I think the issue here is that... I mean, that kind of undermines your argument that these other violations that don't go to competence are somehow less important because if he's got an expectation of permanent employment, aren't we dealing with a protected liberty interest? Well, that is addressed through the statutory provisions. Yes, Your Honor, that's addressed through the statutory provisions. That's why due process is provided through the statutory provisions. That's why you have the ability to go before a grievance examiner. And you have the ability to have a final decision maker review the grievance examiner's recommendation. But I would also... So the reasonable expectations should not include the expectation of judicial review, is what you're saying, correct? If it's not adequately pled. I think the issue here is that appellant failed to plead a waiver of the United States sovereign immunity. In addition to the reasonable expectation, appellant has to adequately plead plausible constitutional claims. Yes, before this court, we've talked about appellant being a permanent employee. But if you go and look at his amended complaint, he doesn't plead any of the statutes at issue. He doesn't reference 7463. He doesn't reference being a Title 38 employee. He fails to plead sufficient facts to even show to this court that he's entitled to due process protections. So again, I think the issue becomes, what did plaintiff adequately plead? He has to plead a waiver of the United States sovereign immunity. He has to plead colorable constitutional claims. He has to plead plausible constitutional claims. There are forms of relief that may be available to him, but his pleadings have to sufficiently state as much in order for the court to have jurisdiction to review those various grounds for relief. Well, how did he do in his other action? It seems to me that all of the claims that he's making have to do with these officials' behavior in their official capacity. So I don't know how he could get a Bivens action to be a waiver of sovereign immunity here. So that case is still being briefed and litigated before the district court. There have been no decisions in that case. Of course, the secretary has argued that there is no Bivens action, but as far as mandamus relief, that's something that still has yet to be briefed by the parties. And so that could potentially be a viable option depending on what the district court decides. But it is still pending review by the district court. So in conclusion, I would assert that in light of the comprehensive framework and comprehensive statutory scheme of Title 38, it clearly excludes this entire set of employees from the Civil Service Reform Act. It creates an extensive framework within which these employees can contest certain disciplinary actions. Title 38 even goes as far to address minimum qualifications for these employees, minimum work hours. There's clear, discernible and correct- Ms. Frazier, in the new case, do they have a Bivens claim? Do they also sue the individuals in their official capacity? They did. They proceeded under both, Your Honor. Yes. So I do think the subsequent filing is key here. It's clear that appellant realized that there were other avenues of relief that they simply failed to plead in the first case and are attempting to seek that relief through the second case. So it's clear if there's no waiver of the United States sovereign immunity, the court lacks jurisdiction to consider the claims at issue. Thank you very much, Mr. Shadid. I'm going to give you one minute, but I'm going to hold you to it. Yeah, you're muted. Thank you, Your Honors. With all due respect, the second lawsuit that we filed should not have anything to do with what's before the court right now because it's outside of this record. However, the court in the current lawsuit, in this appeal, said that the case was dismissed without prejudice to refiling. The case that's before you now was submitted on a 12B1 status only, subject matter jurisdiction. It wasn't brought on a 12B6. It wasn't brought on a basis of plausibility. And we did plead. We pled under the APA. We affirmatively pled it. You don't have to say the words, waiver of sovereign immunity. We pled under Title V and said that those statutes were applicable. That's what we did in the present case, Your Honor. And I'm stopping at one minute. Thank you, Your Honors. All right. Thank you both for your helpful arguments. The case is submitted and counsel are excused.